ALBANY,
August, 1815.

WESTON
v.
BARKER.

——————◦※◦——————

## WESTON *against* BARKER.

Where A.
assigns certain
securities to B.
in trust, to dis-
pose of part of
the money to
be received
thereon, to cer-
tain specified
purposes, and
*to hold the ba*
*lance, subject to*
*the order of A.*
which trust B.

THIS was an action of *assumpsit*, tried before his honour the late Chief Justice, at the sittings in *New-York*, the 12th of *November*, 1813.

*Bowen & Robins*, partners in trade, in *New-York*, for the purpose of securing certain debts, on the 4th of *March*, 1811, assigned to the defendant two policies of insurance, dated on the 1st of *September*, 1810, made by the *New-York Insurance*

accepts; and A. then directs B. to pay the balance to C. and B. afterwards receives the money due on the securities; C. may maintain an action for money had and received, against B. to recover such balance: the acceptance of the trust by B. being equivalent to an express promise to the person to whom A. should direct the money, when received, to be paid.
And in such action, B. cannot set-off a demand which he may have against A.

*Company*, on vessel and cargo. At the time of the assignment, they addressed a letter to the defendant, as follows: " Sir, we have, together with Mr. *E. M. Stillwell*, (who was jointly interested with them in the vessel and cargo,) subscribed a certain assignment to you of two policies of insurance on the brig *Salem* and cargo, on which is claimed from the *New-York Insurance Company* about 5,200 dollars :" " One half of which is for our account, which you will please to understand to be held in trust to discharge the following obligations of ours, viz :

| | |
|---|---:|
| An acceptance in favour of *John Ward*, | $594 03 |
| A note endorsed by *E. M. Stillwell*, at 6 months, 11th of *August*, | 937 50 |
| A note endorsed by *E. M. Stillwell*, at 6 months, 22d of *August*, | 82 25 |
| | $1,613 83 |

" After which you will hold the balance, which may be received, *subject to our order.*"

On the back of a copy of this letter, the defendant, at the same time, made and subscribed the following endorsement. " I acknowledge to have received from *Bowen & Robins*, the original letter, of which the within is a copy, the conditions named in which I engage to comply with. *New-York, March 4, 1811.*"

*Bowen & Robins* being indebted to the plaintiff in a larger sum than the amount of the fund in the hands of the defendant, which remained unappropriated, (after drawing on him for about 91 dollars, in favour of a third person,) endorsed on the above mentioned copy of a letter, an order, in favour of the plaintiff, on the defendant, as follows: " *New-York, March* 15, 1811. Sir, For value received, we hereby request you will account with *Abijah Weston*, of this city, for the amount recovered of the *New-York Insurance Company*, on policies assigned you for our account, first providing for assumptions made by us to amount of 1,705 dollars, as per account annexed ;" which he delivered, with the endorsement of the defendant, above stated, to the plaintiff, and of which order or assignment to the plaintiff, the defendant, at the same time, or within a day or two thereafter, had notice.

ALBANY,
August, 1815.

WESTON
v.
BARKER.

The defendant, on the 16th of *April*, 1811, received, on the policies of assurance so assigned to him, the sum of 1,700 dollars; on the 27th of the same month, the further sum of 2,298 dollars and 50 cents, including the premium notes of 272 dollars and 50 cents; and on the 15th of *May* following, the further sum of 978 dollars and 76 cents, making in the whole, exclusive of the premium notes, 4,704 dollars and 76 cents, the one half of which, belonging to *Bowen & Robins*, was 2,352 dollars and 38 cents; of which sum, after deducting the amount specially appropriated by the order of *Bowen & Robins*, previous to their assignment to the plaintiff, there remained a balance of 647 dollars and 38 cents in the hands of the defendant, which, with the interest thereon, was the amount claimed by the plaintiff in this action.

The defendant offered in evidence, by way of *set-off*, a note drawn by *Bowen & Robins*, in favour of *Mason and Wilcox*, for 2,300 dollars, dated *January* 3, 1811, payable four months after date, and which was received by the defendant from *Bowen & Robins*, for goods sold to them by the plaintiff; which note was protested for non-payment on the 11th of *May*, 1811.

A verdict was found for the plaintiff for 800 dollars, subject to the opinion of the court; and the amount to be liquidated accordingly.

The case was argued by *Warner and P. W. Radcliff*, for the plaintiff, and by *Wells*, for the defendant; but the points and authorities are so fully considered in the opinion of the court, that it is deemed unnecessary to state the arguments of the counsel.

THOMPSON, Ch. J., delivered the opinion of the court. The principal question in this case, is, whether an action for money had and received, can be sustained by the present plaintiff. It was not denied on the argument by the defendant's counsel, but that the action would be supported, if an express promise to pay was proved; and, indeed, this principle is too well settled to be questioned. It has been repeatedly recognised in this court. [7 *Johns. Rep.* 103. 8 *Johns. Rep.* 149.] It appears to me that the proof in this case, establishes such a promise, according to the good sense, and sound interpretation of the rule. That the defend-

ant has actually received the money, is admitted, and the plaintiff's claim to it is supported by the strongest principles of justice and equity, as will appear from a bare statement of the case.

*Bowen & Robins*, on the 4th of *March*, 1811, assigned to the defendant two policies of insurance, in trust, to discharge certain specified debts, and the balance to be held subject, to their order. The defendant, on the same day, signified, in writing, his acceptance of the trust; and expressly engaged to comply with the conditions mentioned in the letter, which declared the trust; viz. to pay the specified debts, and hold the balance, subject to the order of *Bowen & Robins*. On the 15th of the same month, *Bowen & Robins* being indebted to the plaintiff, gave him an order on the defendant for such balance, of which notice was about the same time given to the defendant. The defendant, afterwards, received the amount due on the policies, and after paying the demands specified in the declaration of trust, held in his hands a balance of 647 dollars, 38 cents, which is the sum, together with the interest, for which this suit is brought.

This brief statement of facts, would seem sufficient to show the plaintiff's right to recover. The money has, in fact, been received by the defendant; and, according to the very terms of his engagement, was received as the money of the plaintiff, and not of *Bowen & Robins*, they having previously directed the same to be paid to the plaintiff. If A. deliver money to B., to be paid over to C., the latter may recover it of B., in an action for money had and received. (1 *Bos. & Pul.* 296.) It is immaterial, in the case before us, whether the money was actually paid by *Bowen & Robins* to the defendant, or whether it came into his hands from any other quarter, by their order. When it was received, it was received as the money of the plaintiff; and so, in the most strict and literal sense, it was money received to the plaintiff's use. It was considered on the argument, that had the plaintiff been named in the declaration of trust, as one of the persons to be paid out of the monies received on the policies, he could maintain this action. And where, in good sense and sound principle, can be the difference, whether he was originally named, or afterwards designated, according to the terms of the defendant's undertaking? His express promise was to hold the balance, subject to the order of *Bowen & Robins*. As soon as

such order was given, this promise attached and enured to the benefit of the person named in such order. It is undoubtedly a well-settled rule of the common law, that *choses in action* are not assignable ; and, therefore, when a person entitled to money due from another, assigns over his interest in it to a third person, the *mere act* of assignment does not entitle the assignee to maintain an action for it : but if there be an *assent* or *promise* on the part of the debtor or holder of the money, the action for money had and received has been holden to lie.

What will amount to such assent or promise, so as to make the holder of the money liable, will be better seen by a reference to some of the adjudged cases on this subject. In *Ward v. Evans*, (2 Ld. *Raym.* 928.) one *Fellows*, having money in his hands of the defendant, gave a verbal order to pay a certain sum to the plaintiff, and to endorse it upon a note, which he, *Fellows*, held against the defendant, and this endorsement was accordingly made; this was held sufficient to maintain the action, for money had and received to the use of *Ward*, the plaintiff. *Holt*, Ch. J., said, when the money was endorsed on *Fellows'* bill, and *Fellows directing that sum to be paid to the plaintiff, and the defendant having the money in his hands,* it amounted to a receipt of so much money by the defendant to the plaintiff's use. So, also, in *Israel v. Douglass and another*, (1 H. Bl. Rep. 239.) The defendants being indebted to one *Delvalle*, he drew an order on them, in favour of the plaintiff, who had advanced money to *Delvalle ;* the defendants accepted the order, and they were held responsible in an action for money had and received. Lord *Loughborough*, in answer to the argument, that the money was, in point of fact, owing by the defendants to *Delvalle*, and that their undertaking was to him, and that no money was in reality had and received by them to the use of the plaintiff, says, the debt, with the consent of the parties, was assigned to the plaintiff, of which the defendants had notice, and assented to it ; by which assent they became liable to the plaintiff for money had and received. Had the defendant, in the case before us, directly accepted the order drawn on him, it would fall precisely within the case last cited. But as I have before observed, this could in principle make no difference, for the express promise of the defendant was, in substance, to pay over the money to whomsoever *Bowen & Robins* should appoint to receive it. And this appointment was made certain by the

subsequent designation in the order. That this was sufficient is established by the case of *Fenner* v. *Meares*, (2 *Black. Rep.* 1269.) It was there held that *indebitatus assumpsit* for money had and received, would lie by an assignee of a *respondentia* bond, where the obligor, by an endorsement thereon, promised to pay the same to *such assignee as the obligor should duly appoint*. Here the promise was not made to any person in particular, but, generally, to whomsoever the obligee should appoint. It is true, that the authority of the two last cases has been questioned by later decisions in the *English* courts. (1 *East*, 104. 3 *East*, 171.) The reasons and principles, however, upon which they were founded, have not been shaken, but, on the contrary, sanctioned by this court, as will be seen by the case of *Neilson* v. *Blight*, (1 *Johns. Cas.* 205.) which was an action of *assumpsit*, for money had and received. From an examination of the facts in that case, it appears that there was no *express* promise made by the defendant to the plaintiff. *Radcliff*, J. after stating the leading facts in the case, observes, that there was a trust created in *Raddon*, for the benefit of the plaintiff, which the plaintiff had a right to affirm and avail himself of, and that this trust was transferred to the defendant, who became equally responsible with *Raddon*, by receiving the wines on the same terms ; that there was an *implied assumpsit in law, the fund being in the defendant's hands, and received by him for the benefit of the plaintiff.* He laid it down as a maxim, that where a trust is created for the benefit of a person, though without his knowledge at the time, he may affirm the trust, and enforce its execution. And *Kent*, J., said, from these facts, the law will infer a promise by the defendant to pay the money, because, in justice and good faith, he was bound so to do. From that case, it is clear that no express promise is necessary, in order to make a party responsible in this form of action. But in the case before us, I think I have shown that there was what must be deemed equivalent to an express promise ; and as soon as the money came into the defendant's hands, he became bound to pay it over to the plaintiff, according to the principle which governed the decision in *M'Menomy & Townsend* v. *Ferrers*, (3 *Johns. Rep.* 82.)

There is no ground upon which the set-off can be allowed ; that is a claim against *Bowen* & *Robins*, with which the plaintiff has no concern. Nor can the defendant complain of

any hardship in the case; for he held this note against *Bowen &
Robins*, when he accepted the trust, and engaged to pay the money now in question to their order. This shows, conclusively, that he did not look in any manner to this fund as security, but trusted to the personal responsibility of the drawers and endorsers for payment.

The opinion of the court accordingly is, that the plaintiff is entitled to judgment.

SPENCER, J., *dissenting*. The facts in this case, in my judgment, do not entitle the plaintiff to a recovery. The simple question is, whether a person having money in his hands belonging to another, is liable to a suit by a third person, to whom the person entitled to the money shall direct it to be paid, without any promise or agreement to pay the money to such third person. I have not been able to find a case, unless it be that of *M'Kim* v. *Smith*, in the *Baltimore* county court, tried before *Nicholson*, Ch. J. (1 *Hall's Law Journal*, 486.) which will warrant a recovery in this case. In *Crifford* v. *Berry*, (11 *Mod.* 241.) wages being due to *A.* from the *East-India Company*, he ordered *B.* to receive the money and to pay it to *C.*, to whom he was indebted; *C.* brought *indebitatus assumpsit* against *B.* *Holt*, Ch. J., held, that the action could not be maintained by *C.* This case is very briefly reported, but there can be no doubt that *B.* had received the money, and that when he was authorized to receive it, he received the direction to pay it to *C.* In *Surtees and others* v. *Hubbard*, (4 *Esp. Rep.* 203.) an action for money had and received was brought by the plaintiffs, as assignees of a ship, to recover the amount of freight; notice had been given of the assignment of the ship and freight to them; the objection was taken that it being a *chose in action*, the demand could not be assigned, so as to enable the assignee to bring a suit in his own name; Lord *Ellenborough* nonsuited the plaintiff, saying, that where a party, entitled to money, assigns over his interest to another, the mere act of assignment does not entitle the assignee to maintain an action for it; the debtor may refuse his assent; he may have an account against the assignor, and wish to have his set off; but if there be any thing like an assent on the part of the holder of the money, in that case, this, which is an equitable action, is maintainable.

In *Fenner v. Meares*, (2 *Black. Rep.* 1268.) the defendant had borrowed money of *Cox* on *respondentia*, and by an endorsement on the bonds, stipulated, in the most express terms, that if they were assigned, he held himself bound to pay the assignee, without any deduction or abatement, and on the return of the ship, and application by the assignee, the defendant desired time, and begged the assignee would not sue him. Two of the judges, Ch. J. *De Grey*, and *Nares*, J., held, that the plaintiff was entitled to recover, without reference to the promise afterwards, on the ground, that these bonds were essentially necessary to carry on the *India* trade, and that it would clog them, and be productive of inconvenience, if they were obliged to remain in the hands of the first obligee; and that the contract was devised to operate on subsequent assignments, and amounted to a declaration, that the money which had been borrowed, should, on assignment, be no longer the money of *A.* but of *B.*, his substitute. *Blackstone*, J., avoided giving any decisive opinion on that point, but put the case on the subsequent promise.

This case may, at first view, be supposed to favour the plaintiff's right to maintain this suit; but I think it very different from the present case. The stipulation to pay to any assignee was as explicit as language could make it; and, besides, it related to a trade which policy required should be protected and encouraged; but this case met with discountenance from Lord *Kenyon*, in *Johnson* v. *Collings.* (1 *East*, 104.) He declared he could not agree to that case, and he supposes that the result was, that the determination of the jury having been made according to equity and good conscience, the court would not disturb the verdict. All the court, however, held, that a promise by a debtor to his creditor to accept a bill and pay it, was not an acceptance of a bill not then *in esse*. The plaintiff, in that case, was the endorser of the bill drawn on a promise by the debtor to accept it, and had added the money counts; and, with respect to those counts, Lord *Kenyon* added, " If we were to suffer the plaintiff to recover on the general counts, we must say, that a *chose in action* is assignable, a doctrine to which I never will subscribe." *Grose*, J., declared it would be of most dangerous consequence to relax the rule of law, to the extent contended for, and that to permit the plaintiff to recover, would be making all *choses in action* assignable.

The case of *Israel* v. *Douglass and another*, (1 *H. Bl.* 239.)

was decided on the ground that the debt, with the consent of the parties, was assigned to the plaintiff, and *Gould*, J., put it on the true footing. He says, " If I pay money to you for another person, it is money had and received by you to his use ; but where is the real and substantial difference, whether I in fact pay money to you for a third person, or whether I give you an order to pay so much money, to which you expressly assent."

Most of these cases came under the consideration of this court, in *M'Evers* v. *Mason*, (10 *Johns. Rep.* 213.) Ch. J. *Kent*, in delivering the opinion of the court, states the case as laid down by *Beawes*, with approbation ; that the party making a promise to accept a bill to be drawn, is answerable in damages to the person to whom the promise is made ; and he adds, " but such a promise is not assignable ; and it seems a little difficult to understand how the endorser of a bill, subsequently drawn, can charge the drawer with acceptance, by virtue of such a preceding promise, which is not of itself assignable, and is, strictly, no part of the negotiable contract :" and he adds, he " had met with no adjudged case, except it be that of *M'Kim & Smith,* in which it had been decided, that an endorser can avail himself of such a previous promise, as amounting to an acceptance under the law merchant, of a bill not then drawn." The case of *M'Kim & Smith* is the opinion of a single judge, pronounced at the trial of the cause ; and, perhaps, the trick attempted to be practised by the defendants on the other creditors of *Brown*, had an insensible influence on the judge.

Great stress was laid upon the defendant's agreement to hold the moneys he should receive on the policies, subject to the order of *Bowen* & *Robins* ; this amounted to no more than an agreement to hold himself responsible for what should be received ; but, at all events, it was no more than an agreement with *Bowen* & *Robins*, to accept and pay their order ; an agreement with which the plaintiff has no concern. In the present case, the plaintiff gave no new credit to *Bowen* & *Robins* in consequence of the defendant's agreement to hold the balance that might be recovered on the policies, beyond the specific appropriations, subject to the order of *Bowen* & *Robins*. I believe what was stated by Mr. *Gorman*, one of the special jury, on the trial of *Pierson* v. *Dunlop*, (*Cowp.* 572.) is true, that it is a

ALBANY,
August, 1815.

universal rule among merchants, that a mere engagement to the drawer of a bill is no engagement to the holder of it.

The injustice of the principle contended for by the plaintiff is very manifest in this case, and it is one of the reasons assigned by Lord *Ellenborough* against such an action. The defendant holds *Bowen & Robins's* note, for two thousand three hundred dollars, for goods sold to them two months before the assignment of the policies, and by sustaining this suit he will be deprived of his set-off.

On the ground, then, that the debt due from the defendant to *Bowen & Robins* for the balance is not assignable, so as to enable the assignee to sue for it in his own name; that the plaintiff has not given to *Bowen & Robins* any new credit, on the faith of the defendant's agreement with them, and that the defendant has had no communication with, or made any promise to, the plaintiff, I am decidedly of opinion, that the action is not sustainable, and that the defendant ought to have judgment.

*Platt*, J., not having heard the argument of the cause, gave no opinion.

Judgment for the plaintiff.