## LANG *vs.* FISKE & *al.*

Where a chose in action was assigned, and the debtor being called on for payment by the assignee, said he would pay to him if he was legally entitled to receive it, it was held to be sufficient to enable the assignee to maintain an action *in his own name*, on showing a legal assignment.

Such promise being made by one, of two, who were copartners—and for a partnership liability—was held to bind the firm.

The assignee may avail himself of such promise under the count for *money had and received.*

A. assigned to B all his interest in certain property, deposited in the hands of a third person, and for which, the latter was bound to account to them jointly. In an action brought by B. on the promise of the debtor or pledgee to account to him alone, made subsequent to the assignment, A. was held to be a competent witness for B.

A verdict in this case was rendered for the plaintiff, which was to stand or be set aside, as the opinion of the Court should be upon the whole case. The facts are sufficiently stated in the opinion of the Court, which was delivered at the ensuing *June* term in this county, by

PARRIS J. —This is an action of assumpsit in which the plaintiff claims the proceeds of a quantity of logs cut by him and one *Moore* and *Crosby*, on the south half of township No. 2, in the 3d range, north of the lottery lands, and hauled into a stream called *Battle Brook.* The logs were cut under a permit from the Land Agent of *Massachusetts* to *Davis*, which permit he transferred to *Fiske* and *Billings*, the defendants, who, in the exercise of their rights derived from *Coffin*, the Land Agent, granted to *Bradford* and *Prince*, permission for one team, to be carried on by *Moore*, *Crosby* and *Lang*, to enter upon, cut and haul pine timber from said township previous to *May* 1, 1828; the timber to be *Fiske* and *Billings'* until the conditions, under which the permit was given, were fulfilled. And in case *Bradford* and *Prince* should fail of paying *Fiske* and *Billings* the amount of *stumpage*, on or before the first of *June*, 1828, on all the timber cut, then *Fiske* and *Billings* to have the right to take, sell and dispose of the timber, and after paying the amount of the stumpage, &c. to pay the balance of all the proceeds of said timber,

then remaining in their hands, to *Bradford* and *Prince,* or their order or assigns. *Bradford* and *Prince,* thereupon, agreed with *Moore, Crosby* and *Lang,* that they should fit out one team to be employed on said township ; *Bradford* and *Prince* agreeing to furnish the necessary supplies for carrying on the business, and *Moore, Crosby* and *Lang* agreeing to cut and haul into convenient streams for running logs, as many logs as they could during the time for hauling ; the logs to remain the property of *Bradford* and *Prince* until the supplies by them furnished should be paid for, they having the right at any time to take any of the logs and convert them to their own use, accounting therefor towards the supplies.

From the foregoing statement of the case, it is manifest that it was the intention of all these parties, that whatever sum should be realized from these logs, after paying *Fiske* and *Billings* the stumpage, and *Bradford* and *Prince* for the supplies, should be the property of *Moore, Crosby* and *Lang.*

The jury have found that the whole demand of *Bradford* and *Prince* for supplies was paid ; and, that being the case, *their* lien upon the logs was discharged.

They having no remaining interest in these logs, their conveyance to *Train* and *French,* on the 23d of *October,* 1828, purporting to assign all their, to wit, *Bradford* and *Prince's* right, title and interest to the logs, was wholly inoperative.

*Fiske* and *Billings,* in their contract with *Bradford* and *Prince,* having reserved to themselves the right to take and sell the timber and appropriate for that purpose so much of the proceeds as might be sufficient to pay the amount of stumpage and all incidental charges and expenses of managing and selling the timber, exercised this right, by seising the logs, causing them to be sawed and the lumber to be sold ; and, after discharging all their lien, have a surplus remaining to be paid to any person who is legally entitled to it. They resist the plaintiff's claim, because, as they contend, he cannot maintain any action for this balance in his own name, but if he is entitled to it, the action to recover it must be prosecuted in the name of *Moore, Crosby* and *Lang.*

It appears that, previous to the commencement of this action, *Lang* purchased of both *Moore* and *Crosby* their interest in these

logs, and took from them an assignment, under which he now claims to be entitled to recover.

Upon the plaintiff's exhibiting to *Fiske*, one of the defendants, the evidence of this assignment, he acknowledged that he had received the money, and said he would pay the nett proceeds, beyond what was necessary to pay himself, to the plaintiff, if he had a legal title to receive it. It is contended that this was a conditional promise only, and, therefore, would not enable the plaintiff to support an action. If he has succeeded in proving that he is legally entitled to this surplus, then the promise, even if it was conditional, has become absolute. The case, so far as it rests upon this point, is not distinguishable from *Austin* v. *Walsh*, 2 *Mass.* 401.

It was further contended, in defence, that the action cannot be maintained against *Fiske* and *Billings* on a promise made by *Fiske*. But they were partners when they entered into the original contract. As such they received the money, and were accountable for it when *Lang*, the plaintiff, became the sole owner. Clearly, the promise of one of the partners, in relation to a partnership concern and during the existence of the partnership, is binding upon the company.

But it is contended that even if an action can be maintained by the plaintiff, in his own name, against the defendants, he has not charged them in proper counts, and the counsel has referred us to *Weston* v. *Barker*, 12 *Johns.* 276. So far from establishing, that case would seem to overthrow the position assumed. *Thompson J.* says, " It is undoubtedly a well settled rule of the common law that choses in action are not assignable ; and therefore, when a person entitled to money due from another, assigns over his interest in it to a third person, the *mere act* of assignment does not entitle the assignee to maintain an action for it ; but if there be an *assent* or *promise* on the part of the debtor or holder of the money, the action for *money had and received* has been holden to lie" — and he cites several *English* authorities in support of his position. *Spencer J.* who dissented from the Court on other points in the case, concurred on this, and referred, with approbation, to the case of *Suretees* v. *Hubbard*, 4 *Esp.* 203, which was an action for *money had and received*, brought by the plaintiffs as

assignees of a ship to recover the amount of freight; notice had been given of the assignment of the ship and freight to them; the objection was taken, that being a *chose in action*, the demand could not be assigned, so as to enable the assignee to bring a suit in his own name. *Lord Ellenborough* nonsuited the plaintiff, saying, that where a party, entitled to money, assigns over his interest to another, the mere act of assignment does not entitle the assignee to maintain an action for it; the debtor may refuse his assent; he may have an account against the assignor; and wish to have his set-off; but if there be any thing like an assent on the part of the holder of the money, in that case, this, which is an equitable action, is maintainable. The case of *Austin* v. *Walsh*, before cited, is in accordance with the same principle. We think the defendants are properly charged under the count for money had and received. It is not necessary that the money should have been received by the defendants *subsequent* to the promise, in order to enable the plaintiff to maintain the action, as contended in the argument. If *Fiske* and *Billings* had money in their hands belonging to *Moore*, *Crosby* and *Lang*, an assignment by *Moore* and *Crosby* to *Lang* vested the equitable title to that money in *Lang*. It was his; and whenever *Fiske* and *Billings* had notice of the assignment, they could pay it to no one else; and upon their assenting to the assignment and promising to pay it to the assignee, they may properly be considered as holding the money thereafter for his use.

It was said in argument that the power to sell this timber remained in *Bradford* and *Prince*, to satisfy their lien for supplies, and that it would be embarrassing to purchasers if, under such a sale, the property did not pass. We are not aware that there is any rule to be applied to this kind of property different from what is applicable to personal property of other descriptions. The pledgee, who has a lien with power to sell, may, undoubtedly exercise that power, and the property will pass to the purchaser, beyond the control or interference of the pledgor. But if the power to sell was merely to satisfy the lien in case of a neglect otherwise to satisfy it, and the pledgor discharges the lien by payment, all authority in the pledgee ceases, and a subsequent purchaser will be in the same situation of one who buys of a pretended owner, but who in fact

has no title. Like all other purchasers in case of defect of title, he must look to the vendor upon his express or implied warranty.

It does not appear by the case, that *Bradford* and *Prince* ever had any of the *Battle Brook* logs, which are the subject of this controversy, in actual possession; or, that they ever directly or expressly *sold* the logs to *Train* and *French.* They *assigned* " their right, title and interest in these logs to *Train* and *French,* and also, at the same time, a note signed by *Moor* and *Crosby,* or a judgment, which may be recovered on such note, as may be necessary to carry the aforesaid agreement into full effect, and to give said *Train* and *French* power to dispose of logs in the *manner and for the purposes aforesaid.*" This is the phraseology of the assignment. From *Prince's* deposition, which is made a part of the case, it appears that *this* note was for the supplies, and was made by *Moor,* in the name of himself and *Crosby* and *Lang;* that it was put in suit, and the action discontinued on account of *Lang's* disputing the execution of the note.

From these facts, there is much reason for believing that *Bradford* and *Prince* never intended to pass to *Train* and *French* any greater interest in the *Battle Brook* logs than their lien growing out of the supplies; that they assigned the note, which they claimed to have taken for the supplies, and their *lien* only, on the logs ; and this is corroborated by the conduct of *Train* and *French,* who immediately, on receiving the assignment, gave notice thereof to *Fiske* and *Billings,* and requested merely that they might be regarded as standing in the place of *Bradford* and *Prince.* They made no claim as purchasers through *Bradford* and *Prince* as agents, but merely as the assignees of their interest, whatever it might be. Now *Bradford* and *Prince* never claimed to be the *owners* of the logs. There is no intimation in the case that they ever had, or asserted, any other title or interest in these logs than that growing out of the original contract before referred to. Neither does it appear that *Fiske* and *Billings,* in seising the logs, causing them to be sawed and selling the lumber, acted or claimed to act in behalf of *Train* and *French,* or any other person or persons except themselves. They had an interest in the logs reserved under their contract with *Bradford* and *Prince,* and it was this interest that they were endeavoring to secure. Having done that, the remaining property in the logs, or the pro-

ceeds thereof, belonged to *Bradford* and *Prince*, unless they had parted with it by conveyance to some other person. They *had* thus parted with it to *Moor*, *Crosby* and *Lang*, reserving a lien as security for supplies advanced, which lien, as the jury have found, had been discharged by payment, previous to any assignment to *Train* and *French*, the real defendants in this action, and for whose benefit it is defended. If the jury found correctly as to the payment for the supplies, there is no reason to doubt, from the report of the case, but that the honest intentions of the parties will be carried into effect. *Train* and *French* may not recover what they expected by virtue of their assignment from *Bradford* and *Prince*, but that will arise from the fact that the note, assigned by the latter, was not recoverable, having been given by *Moor*, without the authority of his associates, whose names he used, and the lien of *Bradford* and *Prince* on the timber having been previously discharged.

At the trial the deposition of *Moor* was offered in evidence by the plaintiff, and admitted, although objected to by the defendants, upon the ground that he was originally a part owner of the property in question. We do not perceive the force of this objection. *Moor*, *Crosby* and *Lang* were jointly answerable to *Bradford* and *Prince* for the supplies. *Lang* had paid four hundred dollars more than his proportion, and in consideration of this payment, *Moor* sells and conveys to him so many of the *Battle Brook* logs as will amount to that sum, which is agreed in the case exceeds the value of *Moor's* interest in the whole lot; of course he had no remaining interest in the logs. In addition to this, he subsequently, by release under seal, discharged *Lang* from all claims of any kind to said logs, or to the proceeds of them forever. If the supplies were not paid for, and *Moor*, *Crosby* and *Lang* are still liable for them, it is for the interest of *Moor* that *Train* and *French* should prevail in this action, as the amount which they might recover would go so far towards diminishing his liability for the supplies, in which case he would be testifying *against* his interest, if in favor of the plaintiff. If the supplies were paid for, *Moor* has no remaining interest in the logs, having assigned it to the plaintiff.

*Allen* and *Warren*, for the plaintiff.

*Rogers*, for the defendants.