TuRLE.y J.
delivered the opinion of the court.
Randolph Ross, a citizen of White county in the State of Tennessee, being indebted to Wiliam Galt of the city of Richmond and State of Virginia, in the sum of $3457, by bond bearing date the 3d day of July, 1816, and due on the 3d day of July, 18Í7, and to the Bank of Virginia, in the sum of $> 15,000, due on the 12th day of August, 1820, did, for the purpose of securing said debts, on the 12th day of August, execute a deed of trust to William Dandrige and William Nickervis, of the city of Richmond and State of Virginia, by which he conveyed in dust for the benefit of the said Wm. Galt and the Bank of Virginia, divers tracts ofland in the counties of Warren and White, State of Tennessee; fifteen negr )es, the names of which not being recollected were described as being nine of them in the possession of Reuben Ross, and the remaining six in the possession of Wm. Ross, Sen., and also the stock in trade in two stores in the State of Tennessee, and one in the State of Virginia. By the provisions of said deed of trust, if Randolph Ross should fail to *148 pay to Win. Galt the amount of his debt on or before the 1st day of January 1822, and to the Bank of Virginia the amount of its debt in three annual payments of $¡5000 each; to wit. on the 20th day of January, 1822, 1823 and 1824, the trustees were authorised, after giving eight weeks previous notice thereof, in some newspaper printed in the city of Richmond, to expose to public sale such of the trust property as they might think proper, and to apply the proceeds thereof, first to the payment of the expenses attending the execution of the trust, secondly to the debt of Wm. Galt, and thirdly to that of the Bank of Virginia. And by- the further provisions of said deed of trust, it was stipulated that until the time might prise when it should become necessary to sell in order to execute the trust, Randolph Ross should be permitted to possess the lands and premises so conveyed, to receive the rents and profits thereof to his own use, also the hire and profits of the slaves, and to have the supreme control and management of the stores and merchandise to the same extent as he might have done, if the deed of trust had never been made.
At the lime this deed of trust was executed, Reuben Ross pnd Wm. Ross, Sen., in whose possession the slaves were, were resident citizens of the State of Virginia. The deed of trust was never registered in the State of Virginia, but upon it the probate and certificate are endorsed, “Virginia, to wit, pt a court of hustings held for the city of Richmond at city hall the 20th day of June, 1821. This indenture in open pourt was proved as to Randolph Ross, Wm. Dandrige, Wm. Nickervis and Wm. Galt, parties thereto, by the oaths of Anthony Robinson Jr., Samuel Lemorne and Anthony Robinson, witnesses to the same, which was ordered to be registered. In testimony whereof, I, Thomas C. Howard, clerk pf the said court of hustings, hereunto set my hand and affixed the seal of the said court on the 20th day of June, 1821.
THOMAS C. HOWARD.”
“Virginia, city of Richmond, to wit: — I, John Adams, jnayor of the said city of Richmond and presiding magistrate pf the court of hustings thereof, do hereby certify that Thomas C. Howard above named, is clerk of the said court, elected p.nd qualified according to law, and that his certificate is in *149 due form. Given under my hand this 21st day of June, 1831.
JOHN ADAMS.”
‘•Virginia, to wit: — I, Thomas Man Randolph, Governor of tho State of Virginia, do hereby certify and make known unto all persons to whom these presents shall or may come, that John Adams, whose name is signed to the annexed document, was at the time of subscribing the same and now is, mayor of the city of Richmond and presiding magistrate of the husting’s court thereof, in the State of Virginia, duly appointed and qualified according to law, and that to all his official acts as such full faith and credit ought to be given. Given under the great seal of the State, 21st June 1821.
THOMAS MAN RANDOLPH.
State of Tennessee, White county: — T, Turner Lane, register of the county of White aforesaid, do hereby certify that the foregoing deed of trust between Randolph Ross of the one part, and Win. Dandrige and Win. Nickervis and others of the second part, together with the sundry testimonials thereto annexed, was this 8th day of August, 1821, registered in the register’s office of said county, in book G, and pages 90 and 100.” Then there follows alike certificate of registration in the county of Warren.
About the 2d day of July, 1821, Reuben Ross having removed from the State of Virginia, arrived at Sparta and settled himself in the county of White, having with him the nine negroes described in the deed of trust as being in his possession in Virginia. On the 14th day of June,¿1820, Anthony Dibrell, one of the defendants, became security for Randolph Ross to the branch of the Nashville Bank at Winchester, for the sum of $750. On the 2Stb day of August, 1821, Randolph Ross conveyed to Reuben Ross twenty-one tracts of land subject to the deed of trust in favor of Galt and the Bank of Virginia. On the 29th day of August, 1821, he executed a deed of trust to Turner Lane and George Dawson for certain lands in the counties of Warren and White, to secure the payment of several debts therein specified, and among others that for which Anthony Dibrell was his security to the bank at Winchester, and on the same day he conveyed to Reuben Ross, eighteen other tracts of land, subject to the trusts ere- *150 ated in tbe deed to Dawson and Lane, and the negroes in dis-subject to the trust in favor of Galt and the Bank ofVir-ginia. The bill of sale conveys the negroes by name, and upon it are the following endorsements of probate and registration:
“State of Tennessee, White county — I, Anthony Dibrell, clerk of the White circuit court, do hereby certify that the acknowledgment of the within bill of sale from Randolph Ross to Reuben Ross, for the within named ten negroes, was duly acknowledged in open court and ordered to be certified. Let it be registered. ANTHONY DIBRELL, Clk.”
“Registered and examined this 8th, August, A. D. 1822.
TURNER LANE, Regr.”
“State of Tennessee, White county, — I, Turner Lane, register of White county, do hereby certify, that tbe foregoing is a true and perfect copy of a bill of sale from Randolph Ross to Reuben Ross, with the probate thereto registered in my office in book G, and page 91, the 8th day of August A. D. 1822. TURNER LANE, Regr.”
In addition to taking the property specified in these different conveyances subject to the trusts therein stated, Reuben Ross, as a further consideration for their execution, did on the said 29th day of August, 1821, execute to Randolph Ross his bond, by which be bound himself to pay tbe sum of twenty thousand dollars, to be discharged in annual enstalments of two thousand dollars each, to be appropriated in the first instance to the payment of the debts specified in the deed of trust of the 2.9th day of August, 1821, to Turner Lane and George Dawson. In pursuance of this agreement, Reuben Ross became bound, together with Randolph Ross and Anthony Dibrell for the payment of the debt of $750. After-wards, for the purpose of raising money to pay this debt to the Nashville Bank, Reuben Ross, executed his note for the amount and interest thereon, with Anthony Dibrell, and Randolph Ross as his securities, payable at the Bank of the State of Tennessee at Nashville.
On the 26th day of January, 1828, this note thus executed by Reuben Ross, was renewed at six months for the last time in the joint names of Reuben Ross, Randolph R°&s; Jacob *151 A. Lane, Anthony Dibrell, Jesse Lincoln, Elijah Drake and Thomas Ely, for $¡785, at which time a power of attorney was executed authorising the president of the bank to confess a judgment at the maturity of the note, if it were not paid.
In May, 182S, Reuben Ross departed this life. On the 1st day of August, 1829, Joseph Phillips, as president of the Bank oí the State of Tennessee, confessed a judgment in the county court of Davidson on the note last mentioned, against all the obligors except Reuben Ross, for the sum of $832 10, and costs. On the 24th day of October, 1829, Randolph Ross, Jacob A, Laue, Anthony Dibrell, Jesse Lincoln, Elijah Drake and Thomas Ely, moved the county court of Davidson for a judgment against John Paine and John Cain, administrators of Reuben Ross, as his securities to the note on which judgment had been rendered against them by the confession of the president of the bank, and obtained the same for the sum of $835 35, and costs. The negroes in dispute were sold under the process issued on each of these judgments, and were purchased by the defendant Anthony Dib-rell, on the 12th day of February, 1S30, for the sum of one thousand dollars. On the22d day of June, 1832, the executors of William Galt filed this hill of complaint against the defendants asking that the negroes and land mentioned in the deed of trust of August 12th, 1820, be sold for the payment of their testator’s debt.
The first question for consideration is, as to the validity of the deed of trust executed by Randolph Ross to Wm. Dandridge and Wm. Nickervis, on the I2th August, 1820. It is argued by counsel for the defendants, that it is void as to creditors for several reasons. 1st. For uncertainty in tlie description of the negroes, they being described not byname, but by number and pi ice of residence, to wit, nine in the possession of Reuben Ross, and six in the possession of Wm. Ross. This description is given we think, with sufficient certainty. The maxim of law that uid cerium est quocl cerium reddi potest,” applies with its fullest force to this question. The' whole number of negroes in the possession of Reuben Ross and Wm. Ross are sold. Upon application to them no difficulty *152 can arise as to their identity. It would have been different, had only a portion of them been sold, as it would then have been impossible without further description to identify them. The case in 11 John. Rep. 405, and the positions assumed in Shepherd’s Touchstone, 249, amply sustain this view of the question.
2d. Because it was not registered in the State of Virginia; the place where the deed was executed, and where the trus-* tees, cestui que trust, and the negroes resided. By an act of the Legislature of the State of Virginia, passed in the year 1819, c 99, it is provided, that deeds of trust and mortgages shall be void as to all creditors till such time as they shall be proven and acknowledged and delivered to the clerk of the proper court to be recorded. That the provisions of the statute of the State of Virginia have not been complied with is not denied, and it follows as a matter of course, that had the property remained in that State, no creditor’s right could have been affected by this deed of trust. ■ But in answer to this objection it is said, that in a short time subsequent to the execution df the deed of trust, the property was removed to the State of Tennessee, White county, and that the deed was legally proved in the State of Virginia, and registered in said county of White and State of Tennessee, within the time prescribed by law, and that therefore it conveyed to the trustees a good and sufficient title as against all creditors whatsoever. At the time this deed of trust was executed, Randolph Ross was a citizen of the State of Tennessee. By both the laws of Virginia and Tennessee, a deed of trust for personal property is valid as between the parties and their heirs without registration; then at the time the negroes were removed from the State of Virginia to the State of Tennessee, there was in existence a deed good as between the parties, which at any time might have been made good in the State of Virginia, as to all but precedent creditors, by being acknowledged or proven and delivered to the clerk of the proper court for registration, and in the State of Tennesse against all creditors by being legally proven or acknowledged and registered in the time required by our law, which is twelve months. For though we recognise as sound law the proposition which asserts that *153 ail the formalities which are by the Jaws of foreign countries . ‘V 0 made indispensable tc the validity of contracts there into, must be duly proven in every foreign tribunal in which they are in litigation, before any right can be founded on them.
Yet we hold them to be such formalities as affect the merits of the contract, and the absence of which vitiates it. In illustration of which may be mentioned cases in which deeds cannot be read in evidence, unless duly proven and registered; cases where by a statute of frauds and perjuries, the contract must be in writing and the consideration stated, and cases in which instruments cannot be read unless properly stamped. But where the formality required is of such a character as does not vitiate the contract as between the parties, but is merely intended for the protection of third persons, then it need not be proven, unless it be in a controversy with a person intended to be protected thereby; to illustrate which may be mentioned the case now under consideration. A deed of trust is executed in Virginia for negroes at the time in that State; by her laws the deed is good between the parties, but void as to creditors, unless duly proven or acknowledged and filed for registration in the proper county. In a controversy arising out of this deed of conveyance in another State, the registration in the State of Virginia need not be proven, unless the controversy be with some one protected by the law requiring its registration. From this reasoning it follows, that as there is no controversy here with any person intended to be protected by the statute of Virginia, the want of' registration in Virginia does not vitiate this deed of trust, and that there is no necessity to prove that it was there registered. But as the vendor resided in the State of Tennessee, and as the property was permitted to be removed thereto, it became subject to the laws of Tennessee, and the deed-of trust not having been recorded in Virginia, it became necessary to record itinTennes see according to her laws, and this we think might be well done, for no one will deny that if the deed of trust had been executed with a view to the removal of the negroes to Tennessee, the domicil of the vendor, that a registration in the State of Tennessee Would have been good to pass the title as against creditors, or in other words, that the deed of trust *154 might have been cancelled and a new one given in anticipa» of the removal of the property, the registration of which in Tennessee would have been sufficient. Why then not reg- , . , ister the first?
We have seen as between the parties it was good. The re» •moval of the property from Virginia had freed it from the claims of all but judgment creditors, and those claiming under the deed of trust; there were so far as we can see, no creditors in the State of Tennessee, in fact no one claiming an interest in the property, except Randolph Ross and the trustees of the deed for the benefit of the cestui qui trust. As our law avoids all secret trusts in favor of creditors, it was indispensably necessary that the deed should be registered in order to preserve the rights of the parties thereto. This brings us to the consideration of (he question as to whether this lias been done, to determine which, we must examine whether it has been proven and admitted to registration according to the provisions of our statutes. In this case the bargainor was a resident citizen of this State, and the subscribing witnesses to the deed were citizens of Virginia. After a careful examination of all of our statutes of registration, we are of opinion that the act of 1809, c 104, § 1, is the only one that is applicable to this ease. This statute provides, that where subscribing witnesses to any deed of conveyance, power of attorney, bill of sale, or bond for the conveyance of real estate, which may require registration, shall reside without the limits of this State, it may be lawful for the holders of such instruments to procure the testimony of the subscribing witnesses, to be entered on record in any court of record having cognizance thereof, and such probate endorsed on such instruments and authenticated according to the act of Congress, shall be admitted to registration in any court of record in this State. Have the provisions of this act been complied with? We are of the opinion they have not. We have no evidence that the testimony of the subscribing witnesses has been entered on record in any court of record in the State of Virginia. The narrative of the clerk endorsed on the back of the deed is not sufficient. The only proof of the fact which we can receive, is a copy of the probate from the records, properly certified by the *155 clerk and presiding fudge or iustice of the court. But if the probate were sufficiently authenticated, has it been registered-as the law requires? Surely not. It lias not been admitted to registration in any court of record in this State, as the statute requires, but the registers of White and Warren counties of their own accord, have spread it upon the registers books of those counties. This is no registration as this court determined in the case of Den vs. Clay, at Jackson in April last, 9 Yer. Rep. 257.
3d. It is contended that this deed of trust is fraudulent upon its face as to creditors. After the decision we have made upon the question of registration, it is not perhaps very important minutely to examine this proposition. We consider the law well settled, that although a debtor may prefer a creditor by deed of trust, yet he cannot thereby contract for his own benefit. He ma) give up his property honestly to pay his debt, hut he cannot secure to himself its use and enjoyment, and if he do so, the transaction is fraudulentas against his other creditors. We think there is sufficient upon the face of this deed of trust for the law to pronounce it fraudulent. The reservation of the right to receive the rents and profits of the land, the hire of the negroes, and to have the superintendance and management of the stores and merchandise to the same extent as if the deed had not been made, is totally inconsistent with the rights of other creditors and of.necessity vitiates it. It is however proper to observe, this is fraud in law and notin fact; for we are fully satisfied that these debts intended to be secured, were justly due, and that nothing more was intended than an honest design to secure them.
In reply to these objections, it is urged by the counsel for the complainant, that granting it to be true that the deed has not been registered, that it is void as to creditors, yet on the 29th day of August, 1821, Randolph'Ross, by bill of sale conveyed the negroes in dispute to Reuben Ross, subject by express contract to the different trusts specified in the deed of August 12th, 1820, which has been duly proven and. registered and is not fraudulent as to creditors. This bill of sale was duly proven on 13th April, 1822, at the White circuit court, and duly registered by the register of said county on *156 the 8th day of August, 1822. The only question then for con-is as to its effect. We have seen that as between Randolph Ross and the trustees of the deed of August 12th, isgo, the legal right to the negroes in dispute was transferred by the deed;- but not so as to creditors. If the deed be good as between the parties but bad as to creditors, still the transaction is valid to all intents and purposes, until there be creditors whose rights are to be affected by it, and if there should never be any, the transaction can never be called in question.
On the 29th day of August, 1821, when the bill of sale from Randolph Ross to'Reuben Ross for the negroes was executed, there were, so far as this court can legally judge, no .creditors of Randolph Ross in the State of Tennessee to be affected by the deed of trust of 12th of August, 1820, for it cannot surely be necessary to argue, to prove that the law re-cognises none as such, unless they be judgment creditors, and the defendants do not pretend that they were. Then at the date of this bill of sale, Wm. Dandridge and Wm. Nickervis, the trustees to the deed of trust, werejthe legal owners of the negroes, subject to the trust specified in the deed, and Randolph Ross the equitable owner. What did Reuben Ross buy? All the right and title which belonged _to Randolph Ross, subject to the debts provided for in the deed of trust, then at that particular moment of time, to wit, so soon as the bill of sale was signed, sealed and delivered, Randolph Ross peased to have any further interest in the property. He became totally disconnected from it, as much so as if he never had any interest in it, and having no creditors at the time who could claim under the law to be injured by the transaction, the property was forever discharged from all his liabilities, and Reuben Ross by contract being substituted in his stead, held the property in trust for Dandridge and Nickervis. In this situation the property remained untill the judgment of the 1st. August, 1829, was recovered by the Bank of the State against Randolph Ross, Anthony Dibrell and others, as security for R. Ross, and the judgment of the 24th of October, 1829, was obtained by Randolph Ross, Anthony Dibrell and others is securities-against Reuben Ross’ administrators, under which ixecutions were issued and the negroes sold and bought by *157 Dibrell. These judgments it is argued are void, and r . , “ . , . . ... lore no right can be acquired under them. We do not think so. It is true that they are summary proceedings, obtained on motion and without notice, and therefore the judgment of the court must specify with sufficient certainly all the facts necessary to give jurisdiction. This we think is done. The judgment in favor of the bank states that Joseph Phillips, the president of said bank, came into open court and produced a power of attorney from the defendants authorising and empowering him to confess the judgment. This shows sufficient authority.
But it is said that the record shows that the power of attorney was executed to Leonard P. Cheatham. The power of attorney legally forms no part of the record, unless it be exhibited in a bill of exceptions, which is not the case here. The clerk had no right to copy it, and it cannot be received to contradict the judgment of the court, which says that Joseph Phillips did produce a power of attorney authorising him to confess the judgment. How can we say in the absence of a bill of exceptions, that there may not have been two powers of attorney, the one to Phillips and the other to Cheatham. This is the only point on which this judgment is attacked, and having sustained it, we sustain the other as matter of course, because they are so intimately connected that they must stand or fall together, the one being the foundation of the other.
The next question is, what did Anthony Dibrell purchase under these judgments. The execution in favor of the bank conveys him no title, because we have seen that Randolph Ross had long before that period parted from all right that he had to the negroes, and because Reuben Ross, -even if he had such right as could be sold by the execution, was no parly to the judgment and therefore his rights could not be affected by it. It only remains then to enquire what interest he acquired by his purchase under the execution on the judgment against the administrators of Reuben Ross. We have seen that as between Reuben Ross and the trustees to the deed of trust of the 12th August, 1820, Reuben Ross held the negroe.s subject to the trusts. Is there any thing arising out of his rela- *158 jjons wiih the persons who obtained the judgment as his securi-against his administrators which changes that relationr We think not. He never held the property as his own absolutely. His bill of sale recognises the debts due to Galt and the Bank of Virginia and makes them an express charge upon the property; it is proven and recorded in the proper county and in the right time. ' No body can have been deceived in supposing the property liable for his debts before the trust debts were discharged, and therefore there is no pretence for saying that it is fraudulent against his creditors. Supposing then that Reuben Ross had an interest in the negroes in question, which was subject to execution for his debts, (a question7 not necessary to be determined and which we do not determine,) what was it? Surely an interest subject to the trust specified in his bill of sale. So that Anthony Dibrell the defendant can only claim to have been substituted by his sale and purchase on this judgment in his place, and to hold the ne-groes subject to the same trusts.
But in answer to this it is said,' that the sale of the negroes subject to the trust debts from Randolph Ross to Reuben Ross, was a trust created for tho benefit of Galt and the Bank of Virginia without their knowledge, which might be changed, altered or destroyed at any time before they received information thereof and assented thereto, and the case of Acton vs. Woodgate, 8 Condensed Eng. Ch. Rep. 97, is quoted as authority for this proposition. This case determines that if a debtor conveys property in trust for the benefit of his creditors, to whom the conveyance is not communicated, and the creditors are notin any manner privy to the conveyance, the deed merely operates as a power to the trustees and is revocable by the debtor, but unquestionably the revocation must be made before the creditors have received information and affirmed the trust. See Kent’s Com. 301—2: 1 John. Cases, 205: 12 John. Rep. 281: 2 P. Wm’s. 427: 1 John. Ch. Rep. 129. In this case it is admitted that Randolph Ross could not of himself revoke the trust, because Reuben Ross was a purchaser for a valuable consideration, and had paid a large amount, though not all of the purchase money. There is no pretence that Reuben Ross agreed to a revocation of the trust *159 before Ins death, and no satisfactory evidence that his admin- • Til- , . , . -r . , T-, . . . istrators did alter his death, it is true, that Randolph took possession of the property after Reuben Ross’ death, but without any kind of authority. We are therefore of opinion that the trust has not been revoked, and that the filing of this bill, if it were necessary that such proof of the affirmation should be had, has fixed the rights of the parties. This train of argument establishes the position, that Galt has a lien upon the negroes for the payment of his debt which is valid in law, and binding upon all persons, either creditors or subsequent purchasers.
Has he lost his lien by laches in neglecting to enforce it from the 1st day of January, 1822, the time the trustees to the first deed had theright to sell upon the non-performance óf the conditions in the deed of trust, up to the 22d day of June, 1832, the time this bill was filed, a period of little upwards of ten years.
We know of no principle upon which it can be so determined, Nó man is bound to pursue his debtor except to avoid the operation of the statute of limitations, or presumption of payment arising from lapse of time. This is an express trust, and no facts are proven to cause the statute of limitations to run, and ten years is too short a time, by any authority, to raise a presumption of payment; besides the indulgence in this case was given at the earnest and repeated solicitations of Randolph Ross, and upon promises to pay made again and again,, which rebuts any idea of fraudulent indulgence; and if a creditor have a legal lien upon his debtor’s estate which is good and available against other creditors, they have no right to complain that he does not enforce it, unless they think the property may sell for more than his debt, in which case they may hasten him by bill in chancery. This has not been done. We are therefore of opinion that the complainant’s right to the relief sought is perfect, and affirm the decree of the chancellor.
Decree affirmed.