1815.

BUNN.

v.

WINTHROP.

Motion denied.

---

BUNN AND OTHERS *against* WINTHROP AND OTHERS.

1815.

*January* 16th.

A voluntary conveyance or settlement, though retained by the grantor, in his possession, until his death, is good.

As between the parties, a voluntary actual transfer, by deed, of a chattel interest, is valid, without any consideration appearing.

In regard to chattel interests, an agreement under *seal* imports a consideration at law. And a voluntary bond, or deed of a chattel interest, will be supported in equity, without consideration.

A *cestuy que trust*, though a mere volunteer, and the limitation without consideration, is entitled to the aid of this court ; but the rule is otherwise where the party seeks to raise an interest by way of trust, on a covenant or executory agreement.

Provision for the mother of a bastard, and for her infant, is a sufficient consideration to support a bond, or a deed of a personal chattels, made by the father of the child for that purpose.

*Plate* used in the family passes under a devise or conveyance of "household goods and furniture."

THE bill in this case stated, that *Thomas Marston*, deceased, being seised of a large real and personal estate, made his will, on the 27th of *July*, 1808, by which he devised parts of his real estate to his grandchildren, and made

some of the defendants his executors. The testator died *January* 11, 1814.

*Hannah Curry,* one of the plaintiffs, separated from her husband, *John Curry,* and by articles, dated *July* 3, 1802, mutually entered into between them, by means of *William Bunn,* plaintiff, as *trustee,* with sureties, she was allowed to live separate from her husband, and enjoy all her estate and property, to her sole and exclusive use.

*Mary Bunn Marston,* an infant, also one of the plaintiffs, was the natural child of the testator and *Hannah Curry.* For about 18 years previous to the death of the testator, *Hannah Curry* resided in his house, and had the care and management of his family, as his housekeeper, the testator being upwards of 70 years of age at the time of his death. The testator repeatedly declared his intention to make provision for Mrs. *Curry,* and his infant daughter by her; and from motives of gratitude towards her, for her long and faithful services, and a sense of moral obligation to provide for her daughter, the testator did, on the 26th of *February,* 1811, make and execute a deed, by which he granted and conveyed to the defendant, *Winthrop,* a house and lot of ground in the city of *New-York,* free from ground rent, during the term for which the testator held the premises, to receive the rents and profits, and apply the same to the support and maintenance of Mrs. *Curry* during her natural life ; and, after her death, he granted and conveyed the premises to his natural daughter, *Mary Bunn Marston,* her heirs and assigns ; and by the same instrument, the testator further gave to Mrs. *Curry,* " so much of his furniture and household goods, then in his house, as she could think sufficient towards furnishing a house in a genteel style;" and all the residue of his furniture and household goods, he gave to the said *Mary Bunn Marston.*

This deed, duly signed, sealed, and delivered, by the testator, in presence of two witnesses, was, by him, enclosed, under cover, with his last will, and was found so enclosed.

after his death, by his executor, *Winthrop*, who delivered the same to Mrs. *Curry*. *Winthrop*, the defendant, is the only acting executor. The furniture and household goods continued in the house of the testator until his death; and he left a large real and personal estate, over and above all his debts. That the defendants object to the deed in favour of Mrs. *Curry*, alleging it to be of no validity as a deed, for want of delivery to the grantee; and because the testator retained the possession of the goods; and that it is also invalid as a testamentary disposition, there being no words to show a testamentary intent. The bill charged that the *plate*, in the house of the testator, was used as part of the furniture, and prayed that the defendant, *Winthrop*, might elect to accept or decline the trust declared in the deed; and that if he should decline, that he might be directed to bring the lease into court; and that the court would appoint a trustee; and that the defendant, *Winthrop*, be directed to furnish an inventory of the plate, furniture, &c.; and that the court would decree the instrument above mentioned valid as a deed or testamentary disposition, &c. That the plaintiff, Mrs. *Curry*, be at liberty to elect and take her portion of the furniture, &c.; and that the residue be delivered to the guardian of the infant, *Mary Bunn Marston*, or otherwise be disposed of for her benefit, &c.

The defendants, in their answers, admitted the facts stated in the bill, and the execution of the deed; but they denied its operation or validity, or that it was delivered by the testator, unless its remaining in the manner stated in the bill amounted, in law, to a delivery; and the defendant, *Winthrop*, expressly refused to accept the trust, or act as trustee; and he annexed to his answer a copy of the inventory of the household furniture of the testator, including his plate; and it was admitted that the testator left a clear estate of the value of 160,000 dollars, over and above all debts and encumbrances.

1815.

BUNN
v.
WINTHROP.

*Slosson*, for the plaintiffs, contended, 1. That the deed was a valid settlement, and a revocation, *pro tanto*, of the will; that such a voluntary settlement is good; that the possession of the deed by the grantor, until his death, did not invalidate or defeat it. (*Villers* v. *Beaumont*, 1 *Vernon*, 100. *Bale* v. *Newton*, id. 464. *Boughton* v. *Boughton*, 1 *Atk.* 625. *Barlow* v. *Heneage*, *Prec. Ch.* 211. *Clavering* v. *Clavering*, 2 *Vernon*, 473. S. C. *Prec. Ch.* 235. 1 *Bro. P. C.* 122.)

2. That if the deed was not valid as a voluntary settlement, it was good, at least, as a testamentary disposition, in the nature of a codicil to the last will and testament of the grantor. (*Ousely* v. *Carroll*, and *Spargold* v. *Spargold*, cited and commented on by Lord *Hardwicke*, in *Ward* v. *Turners*, 2 *Ves.* 440. *Rigden* v. *Vallier*, 2 *Ves.* 252—258. *Peacock* v. *Monk*, 1 *Ves.* 127. 1 *Swinburn on Wills*, *Powell's* ed. note, p. 74. part 1. sec. 10.)

3. That the *plate* passed under the general words " household goods and furniture." (*Roper on Legacies*, ch. 16.)

*Harison*, for the defendants, did not deny the general doctrine as to voluntary settlements, but contended that, in all the cases cited, the voluntary deed was good on the face of it; and that no instance could be cited where a mere voluntary conveyance, not valid at law, had been made valid in equity. (1 *Fonbl. Equity*, 339., *et seq.*)

In this case, there was no legal consideration for the deed, to make it avail to the *cestuy que trust*. The claims of Mrs. *Curry* were not of that meritorious nature to give legal efficacy to the deed; and her daughter could not, in law, be so considered the daughter of the testator, as to create the consideration of natural love and affection to support a covenant against him or his representatives. (*Prec. in Ch.* 475. 2 *Ves.* 182.)

As it respected the leasehold estate which this instrument was to convey, it was not a bargain and sale, for want

of a valuable consideration; it was not a covenant, in the
nature of a covenant to stand seised, because there was no
legal relationship between the grantor and *cestuy que trust;*
it was no demise, for there was no reversion or rent re-
served; it was not an assignment of the term, for the assignee
must hold subject to the rent. As to the donation of the
household furniture, it derived no additional validity from
the deed; it would be equally good if it had been by *parol.*
In either case, a delivery is necessary to consummate a
gift. The testator might have revoked it when he pleased,
and his representatives cannot be bound where the testator
was at liberty. As to any possession by Mrs. *Curry*, it
could be only that of a *servant*, which is a possession for
the master. (2 *Vesey*, 438.)

It is not denied that a will, or codicil, may be in the form
of a deed; but, then, it must appear, from the face of the
instrument itself, that it was intended to operate after the
death of the party; or, in other words, that it was testa-
mentary. Such was the case of *Peacock* v. *Monk;* but the
plaintiff did not claim under a will, and unless the convey-
ance was established as a valid deed, he could not recover.
The face of the paper itself does not contain any feature of
a testamentary disposition. But whatever may be its com-
plexion, this court cannot establish it; nor can the plaintiffs
found any claim on it, as a testamentary disposition, until it
has been proved in the court of the surrogate. To that
court, with the right of appeal to the judge of probate, and
to the court of errors, is committed, exclusively, the power
of determining every thing appertaining to the proof of a
will, and every part of it relating to personal property.
Even in cases of fraud, so peculiarly within the jurisdiction
of this court, if relating to obtaining of wills of personal
estate, resort must be had to that tribunal which, in testa-
mentary causes, exercises the power and jurisdiction of the
spiritual courts. (2 *Vernon*, 8. 76. 1 *Fonbl. Equ.* 12.
2 *Fonbl. Equ.* 379, 380.) The plaintiffs have, therefore,

mistaken their remedy; and should this court even think that the paper ought to be regarded as a testamentary disposition, it ought to dismiss the bill, without prejudice.

*Slosson*, in reply, said, there was a well settled distinction between deeds for the conveyance of land, and those for the transfer of chattel interests. The former, operating only by creating a *use*, and the transmission of the possession to the use, required a consideration to create the use; and blood or marriage is necessary consideration in a covenant to stand seised, for chancery will not aid a mere volunteer, by decreeing a specific performance of a covenant. But if the estate passed by the conveyance at law, equity will support it *against the donor*, as much as if the most solid equivalent had been paid. (*Villers* v. *Beaumont*, 1 *Vernon*, 100.)

Now, a mere voluntary conveyance of a chattel interest in land, or of personal property, *as between the parties*, there being no fraud or imposition, is valid. A consideration in such a case is not requisite to be shown, where the contract is under *seal*, and the estate executed. This is different from a mere promise or gift, by *parol*, without consideration, and unaccompanied with delivery, and which is properly denominated a *nudum pactum*. But the mere defect of consideration is not the true objection to its validity; but because the law requires a consideration as evidence of the deliberate assent of the promissor: and this assent may be evidenced by the solemnities with which the contract is made. The solemnity of sealing imports a consideration, or, more properly, it precludes the obligor, except in cases of illegality or fraud, from averring the want of a consideration. So, covenant at law lies on a sealed instrument, and this court will decree the payment of a voluntary bond. (1 *Fonbl.* c. 5. s. 1. note (*a.*) *Hard.* 200. 1 *Eq. Cas. Ab.* 84. 3 *Johns. Rep.* 491. 3 *P. Wms.* 222.) Where a delivery is not essential to transfer the right of property, the solemn execu-

tion of the deed is sufficient. (1 *Fonbl. Eq.* 338. *Plowd.* 308.) It is to be observed, that the plaintiffs do not seek to establish a defective conveyance, but to prevent a failure of the trust for want of a trustee. (2 *P. Wms.* 222.)

1815.

BUNN
v.
WINTHROP.

But we contend that, in regard to Mrs. *Curry*, her long services, as well as the reparation and atonement due to her from the intestate, formed a valuable and meritorious consideration for the conveyance; and this is strengthened, also, by the consideration that it was intended as a provision for the child. Numerous cases might be cited, in which past seduction was held a valid consideration to support a provision for the mother and child. (2 *P. Wms.* 434. *Cas. temp. Talb.* 153. *Ambler,* 520.)

Though the blood of an illegitimate child is not sufficient in law to *raise a use,* yet a use may be *declared* in favour of a bastard, *in esse.* (*Co. Litt.* 123. *a.* n. 8.)

Again, here is a conveyance coupled with a *trust,* which, in itself, is a consideration, as it requires an act to be done by the trustee.

The grant in this case is not a demise of a term by the owner of the fee, but a transfer by the lessee. We insist, for this reason, that this is a valid conveyance at law, which this court will not suffer to be defeated by the acts or negligence of the trustee.

THE CHANCELLOR. The object of the bill is to seek performance of the trust created by the deed of the 26th of *February,* 1811, by having a competent trustee provided who will execute it, and by carrying the provisions, in favour of the plaintiffs, into effect. This has led the counsel into a discussion touching the validity of that deed, and how far a court of equity ought to interfere to aid it.

After a consideration of the case, I am induced to conclude, that there is no well-founded objection to a decree in support of the subject matter of the bill.

1815.

BUNN
v.
WINTHROP.

The instrument is good, as a voluntary settlement, though retained by the grantor in his possession until his death. There was no act of his, either at the time, or subsequent to the execution of the deed, which denoted an intention contrary to that appearing upon the face of the deed. The cases of *Clavering* v. *Clavering*, (2 *Vern.* 473. 1 *Bro. P. C.* 122.,) of *Boughton* v. *Boughton*, (1 *Atk.* 625.,) and of *Johnson* v. *Smith*, (1 *Ves.* 314.,) I had occasion lately to consider, in the cause of *Souverbye and wife* v. *Arden*,* and they will be found to be authorities in favour of the validity and operation of deeds of settlement, though retained by the grantor, under circumstances much less favourable to their effect than the one now under consideration.

* *Ante*, p.251.

Nor do I think that the want of some good or valuable consideration appearing on the face of the deed ought to preclude this court from lending its assistance. There is no rule of the court against giving effect, as between the parties, to a voluntary actual transfer by deed, of a personal or chattel interest, without any consideration appearing. The rule, I apprehend, is directly otherwise, as to personal property, whatever it may be as to real estate. It was said by the Chancellor, in *Bold* v. *Corbett*, (*Prec. in Ch.* 84.,) to be discretionary in a court of equity, whether it would aid a voluntary conveyance where there was no remedy at law; and by looking into the earlier cases it would seem that there was much floating and unsettled opinion on the question how far equity would help a defect in a voluntary conveyance of real property, or decree specific performance in the case of a voluntary covenant. (1 *Ch. Rep.* 84. *Wiseman* v. *Roper*, 2 *P. Wms.* 467, 8. *Randal* v. *Randal*, 2 *Vent.* 365. n. 1 *Vern.* 100, *Villers* v. *Beaumont.*) With respect, however, to chattel interests, an agreement under seal imports a consideration at law. In *Beard* v. *Nuthall*, (1 *Vern.* 427.,) a bond, though voluntary and without consideration, was supported by a decree; and the Master of the Rolls, in 3 *P. Wms.* 222., spoke to the same effect as to a

voluntary bond. But it will be sufficient, on this subject of
aiding voluntary agreements, to recur to the distinction de-
clared by Lord *Eldon*, in *Ellison* v. *Ellison*, (6 *Ves.* 662.,)
as being one which reduces this point to something like es-
tablished rule. If you want, according to that distinction,
the assistance of chancery to raise an interest by way of
trust, on a covenant, or executory agreement, you must have
a valuable or meritorious consideration ; for the court will
not constitute you *cestuy que trust*, when you are a mere
volunteer, and the claim rests in covenant, as a covenant to
transfer stock. But if the actual transfer be made, the
equitable interest will be enforced; for the transfer constitutes
the relation between trustee and *cestuy que trust*, though
voluntary and without consideration. To the same effect
was the observation of Sir *Joseph Jekyll*, in *Lechmere* v.
*Earl of Carlisle*, (3 *P. Wms.* 222.,) that every *cestuy que
trust*, though a volunteer, and the limitation without con-
sideration, was entitled to the aid of a court of equity.

The deed in question, in this case, was an actual creation
of the trust and transfer of the specified interest; and no
doubt can arise under the above distinction, even indepen-
dent of the operation of the instrument as a deed, that this
court ought to give it effect and performance.

If it was necessary to go further on this point, I should be
induced to say that the facts appearing in the bill and answer
amount to proof of a consideration. One of the plaintiffs
is an infant and natural child of the grantor ; and the other
is the mother of the child, who had resided in the house of
the grantor, having the charge of his family for as much as
fifteen years prior to the date of the instrument, and while the
grantor was, during that time, passing from the age of 55
to that of 70 years. It appears to me that, under these
circumstances, the grantor, a man of very large fortune, was
bound, in reason and justice, to make competent provision for
the mother and the child. *Past* seduction has been held a
valid consideration to support a covenant for pecuniary re-

paration; and the innocent offspring of criminal indulgence has a claim to protection and support, which courts of equity cannot, and do not, disregard. It may be truly said, *Non obtusa adeo gestamus pectora.* In the cases of the *Marchioness of Annandale* v. *Harris*, (2 *P. Wms.* 432. 3 *Bro. P. C.* 445.,) of *Cray* v. *Rooke*, (*Cases temp. Talbot*, 153.,) and of *Cary* v. *Stafford*, (*Amb.* 520.,) settlements by way of voluntary bond, covenant, or deed, as the *præmium pudicitiæ*, were established, and a specific performance decreed.

I have no doubt that the plate, in the use of the family, is embraced by the words household goods and furniture. (*Roper on Legacies*, vol. 2., 239. 249—255., where the authorities are collected.) I shall, accordingly, decree, that the plaintiff, *Hannah Curry*, elect, in the presence of a master, such portion of the household goods and furniture (plate included) as shall be deemed sufficient by her, with the approbation of such master, towards furnishing a house in a genteel style, having due regard to her circumstances and condition in life. That the lease alluded to in the said instrument be deposited with the assistant register; and that the residue of the furniture and household goods be delivered over to the guardian of *Mary Bunn Marston*, to be preserved for her use; and that, until further order, the assistant register take charge of the rents and profits of the house and lot mentioned in the said instrument, and apply the same as therein directed.

Decree accordingly.