Dunlap v. Edgerton.

## JOHN S. DUNLAP v. JACOB EDGERTON.

*Articles exempt from attachment.*

A pianoforte is not exempt from attachment and execution as an "article of household furniture necessary for upholding life."

TROVER for a pianoforte. Plea, the general issue, and trial by the court, at the March Term, 1857,— KITTREDGE, J., presiding.

It appeared on trial that the defendant, as sheriff, levied an execution in favor of one Huntoon against the plaintiff, upon the pianoforte in question, and duly sold it upon the execution for two hundred and ten dollars. No question was made in reference to the validity and regularity of the proceedings, except that the pianoforte was not subject to attachment.

The piano had been owned by the plaintiff for a year or more before the levy, and it was used in his house for his daughter, about ten years of age, to learn to play upon. There was no evidence in regard to the musical taste or acquirements of the plaintiff or any other member of his family, or that the piano was used by any one except the daughter above mentioned. About a year before the levy the plaintiff was superintendent of the Rutland and Burlington Railroad, and received a salary of about two thousand dollars. The plaintiff was insolvent at the time of the levy.

The county court decided as matter of law, that the pianoforte was exempt from attachment and execution, and rendered judgment in favor of the plaintiff for two hundred and ten dollars and interest. Exceptions by the defendant.

*Charles L. Williams*, for the defendant.

If, instead of a *musical instrument*, the article had been a *bed, carpet, lamp, piece of crockery, tin or wooden ware*, or a cooking utensil, its suitableness and necessity and consequently the question of its exemption from attachment would have been a *question of fact* to be determined as a matter of fact. *Van Sickler* v. *Jacobs*, 14 Johns. 434; *Willson* v. *Ellis*, 1 Denio 462; *Bourne* v. *Merrill*, 22 Vt. 429. Consequently the decision of the question "*as a*

Dunlap v. Edgerton.

*matter of law,"* without a decision as to the suitableness and necessity of the article as a matter of fact, was error.

But as *matter of law* we insist that the court should have held the pianoforte to be without that class of articles to which the statute applies, the suitableness and necessity of which might have been submitted to and determined by the triers of the facts in the case. *Merriam* v. *Cunningham,* 11 Cushing 40.

That it is an article of household furniture we are not disposed to question. It would probably pass with framed pictures, ornamental china and specimens of sculpture designed and used for the embellishment of a dwelling, in a bequest of all a testator's *"household furniture,"* which term is said to comprise " everything that contributes to the *use or convenience* of the householder, or the *ornament* of the house."

In this definition is found the distinction between those articles of household furniture, which, when shown to be suitable and necessary, are exempt, and those which are not. Those which contribute to the *use and convenience* of the householder, are of the class which may be exempt. Those which contribute merely to the ornament of the house or the amusement and entertainment of the householder and his guests, are of a different class, not contemplated by the legislature or within the fair scope and meaning of the act.

This distinction will not be found to be overlooked in any of the cases referred to by the plaintiff. In *Crocker* v. *Spencer,* 2 D, Chip. 70, the cooking stove is spoken of by the court as "not an article of ornament and luxury," both of which we insist the piano is. In *Leavitt* v. *Metcalf,* 2 Vt. 343, the time piece is exempted because an article of convenience, and articles of *convenience and comfort* are spoken of by the court as those which are regarded as *necessary,* and it will be difficult to find any definitions of convenience or comfort, which have any very obvious application to a pianoforte.

*Linsley & Prout,* for the plaintiff.

The legislature have exempted from attachment and execution " such household furniture as is necessary for upholding life." When the statute was passed, cooking stoves had not been invented, and hence were not then necessary for upholding life.

16

Dunlap v. Edgerton.

But in 1824 the supreme court, in *Crocker* v. *Spencer*, 2 D. Chip. 68, not only held such stoves necessary, but discussed the principles applicable to the question, and held,

1. That the necessity of the statute was not an absolute but a qualified necessity.

2. That it was such a necessity as originally induced the owner in good faith to purchase it for domestic use.

3. That the law did not favor the invasion of the domestic board.

4. That a cooking stove in the then state of the country was an article of necessary household furniture.

In 1829, *Leavitt* v. *Metcalf*, 2 Vt. 342, was decided, and a brass time piece was held to be exempt from attachment. In that case the court say the necessity of the statute extends to articles of comfort and convenience, and liken it to the necessaries of an infant or *feme covert*, which the law declares to be what is customary with persons of their degree and condition in life. See also *Hunt* v. *Hyde*, 5 Vt. 332; *Freeman* v. *Carpenter*, 10 Vt. 434.

The doctrine to be educed from all the cases is, that property, bought *bona fide* as household furniture, and put in use by the owner, being suited to his condition in life, is not attachable.

The opinion of the court was delivered by

ALDIS, J. The plaintiff was the owner of a pianoforte, which was used in his house for his daughter to learn to play upon. The defendant, as sheriff, levied an execution in favor of one Huntoon upon the piano, and sold it. Thereupon the plaintiff brought this suit, claiming that the piano was "an article of household furniture necessary for upholding life," and so exempt from attachment by statute. The county court ruled that the piano was so exempt, and to this decision the defendant excepts.

The statute exempts from attachment and execution "such suitable apparel, bedding, tools, arms and articles of household furniture as may be necessary for upholding life."

This statute was enacted at a very early day. It originated in a sentiment of humanity—of tenderness to poverty. Its object was to protect the poor man in the enjoyment of the necessaries of his life, so that the reasonable subsistence of himself and his family might not be endangered by the exactions of creditors.

Dunlap *v.* Edgerton.

was intended to secure the fruits of industry to the primary object of labor — the maintenance of. life in reasonable comfort. Its policy was to cherish in the poor a spirit of industry and a feeling of independence. The exemptions of the statute have not been found to operate to the injury of creditors. Rarely does the case occur where a person invests in such articles property that ought reasonably to go to the payment of his debts.

The courts have always been disposed to give a liberal construction to the act, and, in the spirit which gave rise to it, to enlarge rather than to narrow its wise and humane provisions.

In an early decision upon this subject (*Crocker* v. *Spencer*, 2 D. Chip. 68), the court held that the strict language of the statute — "necessary for upholding life,"— must be understood in a qualified sense, and defined "the necessity" contemplated by the act to be "that necessity which originally induced the possessor to purchase the article for actual domestic use." In that case it was decided that a person "having a fireplace, chimney and oven, and owning all the necessary utensils of cooking," (such was the language of the defendant's rejoinder,) was entitled to a cooking stove, which was at. that time a new invention and not in very general use.

In *Leavitt* v. *Metcalf,* 2 Vt. 342, a brass time piece was held exempt from execution. The court say, the word "necessary," in legal language, extends to things of convenience and comfort suitable to the situation of the person in society, and illustrate its meaning by a reference to the decisions in regard to necessaries furnished infants and married women. In *Hunt* v. *Hyde,* 5 Vt. 328, the decision in 2 D. Chip. was confirmed; and in *Dow* v. *Smith,* 7 Vt. 465, and *Freeman* v. *Carpenter,* 10 Vt. 434, the same liberal construction was given to the statute.

It is also to be noted that, while the decisions of the courts have been thus uniform and liberal in their construction of this statute, the legislation of the state has pursued the same course — has from time to time, by special enactments, increased the amount and variety of the articles exempt from execution, and within a few years past has extended the same immunity to the homestead. These decisions and this legislation all stand upon the same ground — the enabling the poor man to maintain his family with reasonable comfort and convenience.

In the practical application of this statute there is difficulty in distinguishing the line between articles required for reasonable comfort and convenience on one hand, and those intended for mere pleasure, show, ornament and even luxury on the other. Chairs, tables, bedsteads, sofas, carpets and looking glasses clearly come within the provisions of the statute; and yet there is a wide range in the style and cost of such articles, some being cheap, plain and for common use, some very expensive, elegant and ornamental. A creditor is not at liberty to attach and take away the expensive article and replace it by one of less cost and perhaps equal utility. The decisions in this state have held that, where the article comes within *the class* that is exempt, it is to be held *as matter of law* that it is exempt, and it is not for the jury to say whether it is necessary in the particular case or not. Where the articles are bought in good faith, with the intent of using them for the comfort of the family and not for the purposes of trade, gain or profit, or to avoid creditors, and where the quantity of articles sought to be protected is not plainly unreasonable, the judgment of the owner as to his own necessity is held to be conclusive on the subject. The difficulty of defining any other rule that can be applied with uniformity, the importance of protecting a man's house and its comforts from invasion, the little advantage that would practically enure to creditors in enforcing a more stringent doctrine, and the opportunities for vexatious litigation which would arise if the necessity of each particular case was to be left to controversy and the decision of the jury, have been deemed amply sufficient reasons for the adoption of this principle.

It is to be observed, however, that while the courts have always held to this liberal rule of construction, they have never overlooked the substantial object, nor exceeded the just limit of the statute, which are to secure to the poor man a comfortable subsistence for himself and his family. The distinction, however difficult in practical application, between what is necessary for comfort and convenience and what is intended for mere pleasure and enjoyment, for show, ornament and luxury, has always been strictly upheld. Hence the means of intellectual enjoyment, of gratifying refined tastes, of participating in social pleasures and hospitalities, of cultivating the affections and the moral and religious sentiments,

Dunlap *v.* Edgerton.

so far as these objects may be promoted by the possession of property, are not embraced within the provisions of this statute. However valuable and excellent these objects are, and although property can be put to no better use than in the attainment of them, they are not the ends which this law was intended to secure. They lie beyond the range of the statute.

To this class we deem music, with its enjoyments and its influences, to belong. The arguments of the plaintiff's counsel, which have been urged with so much ability in illustrating the pleasures, the moral influences and the positive utility of music, however just and true in themselves, do not seem to us to furnish a safe rule for the exposition of this law. The question is not how home may be made more attractive, its pleasures increased, its good influences strengthened and promoted. Such considerations may well be regarded in legislation. For us the simple question is, was it the real intent of this statute that the piano and (by necessary connection) other musical instruments in common use, should be exempt from attachment?

In the opinion of the court the piano does not belong to the class of articles embraced within the language of this act, construed in the most liberal sense. It is not an article of mere comfort and convenience. It does not promote the maintenance of human life. It does not even minister to a want that is universally felt. It is, perhaps, as often kept for mere show and ornament, and from a compliance with the fashion of society, as for the sake of the enjoyment that is derived from its use. Its necessary expense is very considerable when compared with the other articles which the law exempts, for this must be costly while they may be cheap.

These considerations readily occur to us as objections to the construction now sought to be established, and yet they add but little force to the impression which first strikes the mind, of the total incongruity between the proposed exemption and the real spirit of the statute.

We decide, therefore, as matter of law, that the piano does not come within the class of "articles of household furniture necessary for upholding life."

The judgment of the county court is reversed.