ELIZABETH WADD, Respondent, *v.* JAMES E. HAZLE-
TON and Others, Executors of ALBERT HILL, Deceased,
Appellants.

*Gift — no knowledge thereof on the part of, nor delivery to, the donee — voluntary
trustee — privileged communications.*

Elizabeth Wadd had been for many years a servant in the family of one Albert
Hill, who had made provision for her in his will. In January, 1884, Albert Hill
told one Bangs, who had been his attorney, that he intended to provide for
Elizabeth Wadd, beyond the sums mentioned in his will, and in June, 1884,
delivered to Charles J. Hill, one of his executors, a bond and mortgage, and
told him to draw an assignment of it to Elizabeth Wadd, and at the same time
said something about his intention to give it to her Charles J Hill drew the
assignment and soon afterwards returned all the papers to Albert Hill, who,
shortly before his death in August, 1884, returned to Hill the assignment, exe-
cuted, but not acknowledged, and told him to deposit it in a bank. No delivery
thereof was made to Elizabeth Wadd during the lifetime of Albert Hill.

*Held,* that these facts established a trust.

That Charles J. Hill became a voluntary trustee of the bond and mortgage for
Elizabeth Wadd, and that he was bound to deliver it to her.

That the trust was not invalidated by the fact that it was unknown to her at its
creation, nor by the fact that there was no delivery of the bond and mortgage
or assignment to her in the lifetime of Albert Hill.

That, although Bangs had formerly been attorney for Albert Hill, the statement
of the latter to Bangs, made in a casual conversation, that he intended to make
a provision for Elizabeth Wadd, beyond that in his will, was not a privileged
communication within section 835 of the Code of Civil Procedure.

Appeal by the defendants, James E. Hazleton, Charles J. Hill and
Hiram W. Hascall, as executors of Albert Hill, deceased, from a
judgment of the Supreme Court, entered in the office of the clerk
of the county of Genesee on the 2d day of June, 1890, upon the
decision of a referee in favor of the plaintiff for $2,796.60 and costs,
after a trial before a referee.

*E. A. Washburn* and *George Bowen*, for the appellants

*L. N. Bangs*, for the respondent.

Macomber, J.:

This action was brought to obtain a delivery to the plaintiff of a
bond in the sum of $2,000, secured by a real estate mortgage upon

lands in the county of Erie. Pending the action, the defendants, with the assent of the plaintiff, and under an arrangement by which such acts should not prejudice the rights of either party, collected the amount of the bond and mortgage, and they now have in their hands the moneys arising therefrom, subject to the final judgment in this action; so that the judgment, which was rendered in pursuance of the decision of the referee, directed the payment by the defendants of the amount thereof, with interest, together with costs of the action, instead of directing an actual delivery of the securities themselves as was prayed for in the complaint.

On the 30th day of June, 1884, the defendants' testator was the owner of this bond executed by one Charles Buckholt, and of the mortgage collateral thereto, to secure the payment of the sum of $2,000, bearing date the 7th day of May, 1881, payable six years thereafter, with interest. On the 30th day of June, 1884, the testator requested the defendant, Charles J. Hill, to draw an assignment of the bond and mortgage to the plaintiff. Mr. Hill took these securities to his home, and drew an assignment thereof, afterwards returning to the testator the papers with the assignment properly drawn and ready for execution. The testator died in Le Roy, Genesee county, on the 29th day of August, 1884, at the age of eighty-seven years, possessed of real and personal property of the value of $65,000 over and above all debts and liabilities. He left no widow or descendant, his wife having died in the year 1870. His final disposition of his property was contained in a last will with four codicils added thereto. In the will, and in the first two codicils, Lucius N. Bangs, then an experienced counselor of long standing, practicing in the village of Le Roy, was named as one of the executors. On the removal of the latter, however, to the city of Buffalo, the testator, by the third codicil, substituted Mr. Hill in his place as one of the executors. Shortly before the death of the testator, and on the second day of his final illness, he gave to Mr. Hill the assignment of the bond and mortgage properly executed by him, but not acknowleged (and so, of course, not recorded), with directions to deposit it, with other papers, in his (the testator's) bank. There is not any evidence that the bond and mortgage, and the assignment thereof, were ever delivered personally to the plaintiff in the lifetime of the testator. An attempt was made in the answer

to claim that the testator was not of sound mind and memory at the time of the execution of the assignment, and that the same was obtained from him through undue influence and fraud. But the evidence wholly fails to establish either of such defenses, as the learned referee has very properly held. The general question, therefore, is whether, at the time of the execution of the assignment of the bond and mortgage by the testator, he intended to make an absolute gift to, or a settlement upon, the plaintiff of this bond and mortgage to take effect at his death. As there was not an actual delivery of the chose in action to the plaintiff in the lifetime of the testator, her right to recover must depend upon the solution of the question whether the testator intended to, and did, in fact, make an effective settlement upon her of this property before his death.

In the consideration of this question, the inquiry is naturally made, what is the evidence showing an actual declaration of a trust, through the medium of which an effective trust was established and the defendants required to account to the plaintiff for the proceeds of these securities? To this end it is necessary to examine the facts and attending circumstances of the testator's acts, his purposes, as declared by himself, both orally and written, somewhat in detail, in order to ascertain his intentions and to determine whether there, in truth, exists evidence of such declaration of trust.

The plaintiff, in the month of August, 1867, entered the service of the testator and his wife, as a household servant, upon an agreed compensation to be paid to her, and there remained in the employment of the testator and his wife until the death of the wife, which occurred in the year 1870. After that time the plaintiff continued in the testator's family as a servant, but upon increased wages, until the testator's death. Prior to the death of the testator's wife the family consisted of the testator, his wife and the plaintiff. After the death of the wife it consisted of the testator, the plaintiff, and for about five years of the time of one Frances J. Field, a niece of the testator, who lived in the family, but who paid for her board. After the death of the testator's wife the plaintiff had the entire charge of the household, doing much manual labor for the family and nursing the testator in his illnesses. The deceased felt under many obligations to her, and he manifested them very conspicuously in

his will and codicils thereto. By the will itself, which bears date June 14, 1878, he bequeathed to her the sum of $1,000. By the same instrument he devised to her the house and lands where he then resided, in the village of Le Roy, consisting of thirteen acres of land, absolutely, and bequeathed to her the household furniture in the homestead, including maps and pictures, together with the farming tools, horse, wagon, phaeton, cutter, robe, harness and such tools and implements as were used in carrying on that small farm. In addition thereto he gave to her, absolutely, out of the residue of the estate not thereinbefore disposed of, the further sum of $1,000. In this will the executors named were Lucius N. Bangs, Hiram W. Hascall and James E. Hazleton.

The first codicil, which was executed June 14, 1880, contains nothing material to this case. On the twenty-second day of September of that year the second codicil was executed, but this likewise in no way affects the rights of the plaintiff. On the 29th day of January, 1883, the testator made and executed a third codicil, by which he appointed as one of the executors the defendant Charles J. Hill in the place of Lucius N. Bangs, in consequence of the contemplated removal of the latter from Le Roy to Buffalo. By the thirteenth clause of the will, power to sell and convey the real estate was given to the executors. By this third codicil such power was modified and explained so as not to refer to or include the real estate or appurtenances thereto belonging, which he had devised to the plaintiff in the eleventh clause of the will. On the 22d day of October, 1883, the fourth codicil was executed by the testator. He therein asserts that in the eleventh clause of his last will and testament, in relation to the household furniture, he intended to include all beds and bedding, earthen and glass-ware, knives, forks and spoons, in short, all articles belonging to or in use in the house.

In the month of January, 1884, the testator had a conversation with Lucius N. Bangs, who had been his counsel in drawing the will and the first two codicils, and had been appointed one of the two executors therein, in which he told Mr. Bangs that he had made up his mind to make a provision for the plaintiff in addition to what he had made for her in his will; that the rate of interest had fallen from what it used to be, and that he had made up his mind to give

her about two thousand dollars in addition to the provision for her in his will; that she had been very faithful in his household, and the provision in his will would be less valuable than when he made it. In the month of June of that year the testator handed the bond and mortgage to the defendant, Hill, and requested him to draw an assignment thereof to the plaintiff, and, as the referee finds, "said something about his intention to give Libbie that."

Such are the conclusions, in substance, reached by the learned referee upon questions of fact which, in this appeal, we have brought to bear primarily upon the question of the testator's declaration of a trust. The referee in his conclusions has not stated the evidence too strongly in favor of the plaintiff. Indeed, in one aspect thereof, the findings could have been much more conclusive against the defendants; for the defendant Hill himself was called in his own behalf as a witness and testified, in substance, on examination by his own counsel, that, a few days before the testator died, he requested him to take possession of some papers, including the assignment of this bond and mortgage, and the bond and mortgage themselves, which was accordingly done; that the testator said something about his intention to give Libbie the assignment, and wanted him to take the papers home and draw it. The witness said, in answer to this, that he had an assignment of a bond and mortgage at home which the testator had given him, and he would use that as a model. As stated above, after the assignment had been prepared, the papers were returned to the testator, who subsequently handed them to the defendant Hill, with the directions above mentioned.

I think that these facts show clearly an actual declaration of a settled purpose on the part of the testator, which was unrevoked at the time of his death, that this particular property should be turned over by his executors to the plaintiff after his death. A voluntary trust may be created by any words or acts of the testator indicating with reasonable certainty, first, an intention on the part of the truster to create a trust; and, second, the subject, purpose and beneficiary of the trust. (*Fisher* v. *Fields*, 10 Johns., 495; *Briggs* v. *Penny*, 3 Macn. & G., 554; *Reeves* v. *Baker*, 18 Beav., 379.)

Mr. Hill, by the arrangement, as testified to by himself, became a voluntary trustee under an obligation arising out of a personal confidence reposed in him by the testator, and he voluntarily accepted

such trust for the benefit of the plaintiff. Everyone who voluntarily assumes the relation of a personal confidence of another is deemed a trustee within the meaning of the rule by which the intended settlement of property by one upon another is to be carried out. It is not necessary that the scheme of the truster should fall within any of the titles of uses and trusts of our Revised Statutes; it is sufficient if his purpose is to effect an end which could have been reached by contract between the truster and the beneficiary dealing directly with each other. The receipt by the defendant Hill of the securities, under the circumstances stated by him, shows an unqualified assent on his part to the assumption of the obligation reposed in him by the testator. He knew, because he had been told prior to the execution of the assignment, that the testator wanted the assignment drawn as a gift to the plaintiff. (*Day* v. *Roth*, 18 N. Y., 453.) We have, therefore, the mutual assent of the truster and the trustee to the creation of the obligation on the part of the trustee to carry out the express wishes of the deceased relating to this particular security. The beneficiary may avail herself of such trust arrangement, although unknown to her at the time, and may take advantage of the same after the death of the testator occurring before any rescission in fact, or any act tending to show a purpose to rescind the creation of such trust. (*Moses* v. *Murgatroyd*, 1 Johns. Ch., 119; *Shepherd* v. *M'Evers*, 4 id., 136; *Cumberland* v. *Codrington*, 3 id., 261; *Weston* v. *Barker*, 12 Johns., 276, 281; *Neilson* v. *Blight*, 1 Johns. Cas., 205; *Acton* v. *Woodgate*, 2 Mil. & K., 492.)

This trustee, Mr. Hill, had good reason to know what the purpose of the testator was, because an assignment of another bond and mortgage had been made to him, but the bond, in that instance, was retained by the testator for the purpose of collecting interest thereon during his lifetime. Mr. Hill, therefore, must be conclusively charged, under the facts stated by him, and under all of the circumstances of the case, with actual knowledge that it was the fixed purpose of the testator to have placed absolutely in the hands of the plaintiff, as owner, these securities after his death.

In point of equity, and according to clear reasoning, the proposition is plain, that he who assumes a confidential relation to another in any matter must, for the purpose of carrying out the wishes and making effective the intention of the other, be deemed to have acted

according to his confidential instructions; and he cannot, either in his own behalf or in behalf of anybody else, be heard to dispute the obligation of the trust thus voluntarily assumed by him. Accordingly, we should treat this case as though Hill had, immediately after the death of the testator, actually delivered to the plaintiff these securities and the assignment thereof.

The case is much stronger in favor of the plaintiff than is that of *Martin* v. *Funk* (75 N. Y., 134), and the many cases there considered in the opinion bearing upon the general question. In the multitude of authorities it would be idle to cite any where the facts are materially different from those arising out of this case; but much instruction may be gleaned by the examination of *Bunn* v. *Winthrop* (1 Johns. Ch., 329); *Barry* v. *Lambert* (98 N. Y., 300); *Schluter* v. *Bowery Savings Bank* (117 id., 125); *Beaver* v. *Beaver*, (Id., 421); *Mabie* v. *Bailey* (95 id., 206); *Gilman* v. *McArdle* (99 id., 451).

The learned counsel for the appellant relies mainly upon the case of *Young* v. *Young* (80 N. Y., 422). Without, however, entering upon any discussion of the decision in that case, and the bearing of it upon subsequent decisions of the same court, it is, perhaps, enough to say that it contains clearly a recognition of the doctrine of *Martin* v. *Funk* (*supra*), but its conclusion was reached upon the ground that the case showed that there was not exhibited in the record a clear, consistent and continuous purpose on the part of the deceased in that case to make a settlement of the property upon the beneficiaries; and that the withdrawal of a portion of the property from one of the packages of the securities, and using it for other purposes, was an act inconsistent with a settled and fixed purpose of making an absolute gift by way of settlement to take effect at his death. Even that case holds that, where the donor retains the property, a trust may still be created, if the acts and words relied upon for the creation of such trust be unequivocal and necessarily implied that the donor holds the property as trustee for the benefit of another. Were it necessary for the upholding of this judgment to decide that the possession of the bond and mortgage, and the assignment thereof, continued to be in the testator, we think that the case of *Martin* v. *Funk* (*supra*), and other cases cited, would be sufficient authority to that end. But, under the facts disclosed in this case, we think

that Mr. Hill was, under the duty imposed voluntarily, and accepted voluntarily by him, bound to deliver the bond and mortgage and the assignment in question to the plaintiff upon the death of the testator.

This conclusion necessarily leads to an affirmance of the judgment, unless the exception to the competency of the witness Bangs was well taken. Mr. Bangs was called as a witness and examined in reference to the intention of the testator, as above stated, in respect to giving the plaintiff a larger sum of money than had been bequeathed or devised to her by the will and codicils. At this time Mr. Bangs was not the counsel for the testator, and he had no confidential relations with him as attorney. He had removed from Le Roy to Buffalo, and his name had been taken out of the number of executors, and that of Mr. Hill substituted in his place. It was a casual conversation in the post-office at Le Roy on New Year's day, where Mr. Bangs chanced to be visiting at the time. After Mr. Bangs removed to Buffalo he had done no business for, and had given the testator no advice in respect to his will or any other matter. The subject of the conversation was not the disposition of the decedent's property by will, but of an entirely independent act in relation to a particular sum of money that he said he intended to give the plaintiff for the reason that, on account of the decrease of interest, the provision which had been made for her by will seemed to him to be inadequate. There is nothing in section 835 of the Code of Civil Procedure which prohibits, under these circumstances, the giving of such conversation in evidence. The witness was not asked professionally for his advice, and such advice was not given. It was the mere declaration of the testator to a person who had known of his pecuniary condition up to a certain time, and of his general purposes, that he intended to give a certain person a given amount of property. Advice was neither sought nor given upon that question. The case, therefore, does not fall within the decision of *Bacon* v. *Frisbie* (80 N. Y., 394), nor *Myers* v. *Dorman* (34 Hun, 115).

The judgment appealed from should be affirmed.

Dwight, P. J., concurred; Lewis, J., dissented.

Judgment appealed from affirmed, with costs.