Cheshire,
Nov. 7, 1905.

## LAMB v. KING.

A piano kept for use in a family is an article of "household goods," within the meaning of that phrase in section 23, chapter 140, Public Statutes.

REPLEVIN, for a piano. Trial before *Peaslee*, J., at the October term, 1904, of the superior court, and verdict for the defendant. The piano was sold conditionally by the plaintiff to one Brown, by a contract made in this state and not recorded. The defendant justified under an attachment by creditors of the vendee. The plaintiff excepted to the verdict, upon the ground that the piano belonged to the class of property excepted from the statutory provision requiring a record of the memoranda of conditional sales.

*Hosea W. Brigham*, for the plaintiff.

*Edalbert J. Temple*, for the defendant.

CHASE, J. By section 23, chapter 140, Public Statutes, "no lien reserved on personal property sold conditionally and passing into the hands of the conditional purchaser, except a lien upon household goods created by a lease thereof, containing an option in favor of the lessee to purchase the same at a time specified, shall be valid against attaching creditors, or subsequent purchasers, without notice, unless the vendor of such property takes a written memorandum, signed by the purchaser, witnessing the lien, the sum due thereon, and containing an affidavit as provided in the following section, and causes such memorandum to be recorded in the town clerk's office of the town," etc. The sole question discussed by counsel and considered by the court is whether a piano is "household goods" within the meaning of this statute—a question that seems to have been suggested, but not considered, in *Batchelder* v. *Sanborn*, 66· N. H. 192. *McNally* v. *Bailey*, 65 N. H. 208, was decided in June, 1889, before the exception of household goods from the operation of the statute went into effect.

Pianos are movable effects or personal chattels—"goods"; and if in use in a family, they pertain to the house and family, and so continue to be within the signification of the word "goods" when its meaning is qualified by the adjective "household." In such case they are "household goods," "according to the common and approved usage of the language." P. S., *c.* 2, *s.* 2; Web. Dict.; *Alsup* v. *Jordan*, 69 Tex. 300. There are no words in the statute

limiting the meaning of these words, excepting those relating to the manner of creating the lien referred to; and they afford no aid in the present inquiry. There is no enumeration of articles in connection with the general terms, from which, as in some cases (*Sumner* v. *Blakslee*, 59 N. H. 242; *Tanner* v. *Billings*, 18 Wis. 173), the intended meaning of the general terms will appear by an application of the rule of *ejusdem generis*. There is nothing whatever in the statute having a tendency to modify the ordinary signification of these words, excepting as above stated. The words have not acquired a "peculiar and appropriate meaning in law." They have been construed differently according to the supposed intent of the user. In the construction of wills and contracts, "household furniture"—a phrase certainly no broader in meaning than "household goods"—has been held to describe articles that are in the house for the common use of the household, or for ornament, and that are not consumed in the using, such as china, plate, pictures, pianos, etc. *Sumner* v. *Blakslee*, 59 N. H. 242; *Benton* v. *Benton*, 63 N. H. 287, 295; *Richardson* v. *Hall*, 124 Mass. 228; *Bunn* v. *Winthrop*, 1 Johns. Ch. 329; *Chase* v. *Stockett*, 72 Md. 235. See, also, *Von Storch* v. *Winslow*, 13 R. I. 23. In the construction of statutes exempting property from attachment there has been a tendency to give a narrower interpretation to the terms. In cases of this kind where the question has arisen, the statutes construed contained material qualifications of the general phrase; as in *Dunlap* v. *Edgerton*, 30 Vt. 224, the exemption was of "such . . . articles of household furniture as may be necessary for upholding life"; and in *Kehl* v. *Dunn*, 102 Mich. 581, it was of "all household goods, furniture, and utensils not exceeding in value $250." See, also, *Towns* v. *Pratt*, 33 N. H. 345.

No support is found in the history of the statute for a narrow interpretation of the phrase. An oral contract for the conditional sale of goods and chattels was formerly valid by the common law of the state. *Weeks* v. *Pike*, 60 N. H. 447. The danger of a person receiving undue credit from the appearance of ownership of personal property arising from possession, and the facility for the commission of fraud afforded by oral agreements respecting title, which are necessarily more or less secret, are supposed to have induced the passage of the act of 1885 (Laws 1885, c. 30), the forerunner of the present statute. *Churchill* v. *Demeritt*, 71 N. H. 110, 111. At first the statute applied to all personal property sold conditionally and passing into the possession of the purchaser; but in 1889 a provision was introduced by which it was not to apply "to leases of household goods, containing an option to purchase at a specified time." Laws 1889, c. 69. This provision

is incorporated into the present statute in the exception under consideration. By it, the common law of the state was restored so far as leases of household goods containing an option for purchase are concerned. Whatever may have been the reasons for the passage of the statute originally, it must be presumed that they were overcome or neutralized by reasons favoring the withdrawal of household goods from its operation. Attention has not been called to any circumstance in existence at the time of the passage of the act of 1889, and inducing its passage, which has a tendency to qualify the natural signification of its terms.

A comparison of the terms of this statute with those of the statute exempting personal property from attachment and levy conclusively shows that the intention was to make the former statute broader than the latter. In the exemption statute, certain articles of household goods are specified, such as beds, bedsteads, a cook-stove, etc., and in addition thereto "household furniture to the value of one hundred dollars." P. S., c. 220, s. 2. In the lien statute, general words are used without any qualification or limitation. In fact, the comparison has a tendency to prove an intention to have the terms used in the latter statute understood in their broadest sense. If this had not been the intention, it seems highly probable that the limitations would have been fully and specifically stated, as they are in the exemption statute. Moreover, if there had been understood to be a relation between the two statutes, it would seem that contracts for the conditional sale of other chattels mentioned in the exemption statute—tools of a person's occupation, a hog, a cow, a yoke of oxen, etc.—would have been released from the operation of the lien statute.

No evidence has been pointed out by counsel or found by the court which shows, or tends to show, that the words "household goods" were used otherwise than in their broadest sense. Accordingly, it is held that the piano in question, if kept for use in the defendant's family, was an article of "household goods" within the meaning of the statute, and consequently was excepted from its operation. If the piano was not kept for such use, it would not be within the exception of the statute. The wording of the case and the interpretation given to it by counsel in their briefs seem to indicate that this question of fact was decided in favor of the plaintiff. If this is the correct interpretation of the case, the verdict should have been in his favor. The case being so understood, the order is,

*Exception sustained: verdict set aside.*

All concurred.